**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marian Begay, | No. CV-21-08010-PCT-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Office of Navajo and Hopi Indian Relocation, | |
| Defendant. | |

Pending before the Court is Plaintiff Marian Begay's Motion for Summary Judgment, (Doc. 19), and Defendant Office of Navajo and Hopi Indian Relocation's ("ONHIR") Cross-Motion for Summary Judgment. (Doc. 23.) The motions are fully briefed and ONHIR has filed the administrative record (the "AR"). (Doc. 12.) Although Ms. Begay requested oral argument on the motion, the Court does not believe it is necessary to resolve the motions. *See* LRCiv. 7.2(f).

This is a Navajo-Hopi Land Settlement Act case in which Ms. Begay asks this Court find that the Independent Hearing Officer's ("IHO's") final decision denying her eligibility for relocation benefits was "unsupported by substantial evidence and is arbitrary, capricious, and contrary to law." (Doc. 19 at 17.) Because the evidence before the IHO was sufficient to find that the Plaintiff was not a legal resident of the Hopi Partitioned Lands ("HPL") in December 1974, this Court denies Ms. Begay's Motion for Summary Judgment and grant ONHIR's Cross-Motion for Summary Judgement upholding the IHO's

decision.

## I. BACKGROUND

Ms. Begay first applied for relocation benefits on October 5, 2009. (Doc. 19 at 3.) Her application was eventually denied by ONHIR on July 19, 2012, when it informed her that she failed to show that she was residing on the HPL as of December 22, 1974. (*Id.*) Ms. Begay timely gave notice of her administrative appeal on September 10, 2012, and OHNIR accepted her appeal on September 21, 2012. (Doc. 12 at 15.) Ms. Begay's administrative appeal hearing was conducted on October 17, 2014, before the IHO. (Doc. 23 at 3.)

The relevant and undisputed facts from the record of that proceeding are as follows: Marian Begay was born on May 12, 1939, and is an enrolled member of the Navajo Nation. (Doc. 12 at 8.) Ms. Begay attended multiple boarding schools throughout Arizona before she graduated from an Oklahoma high school in 1961. (Doc. 12-2 at 80–84.) During her childhood, her family had two homesites only a few miles apart from one another. (*Id.* at 76.) Ms. Begay testified that she spent most of her time at site 1. (*Id.*) Site 1 was approximately 5 miles north of the Jeddito Chapter House. (*Id.* at 184). She described site 1 as having a hogan, another house made out of Cedar log and a dirt roof, a shed, a small cornfield, a horse corral, and a sheep corral. (*Id.* at 77–78.) Site 2—about 2 to 3 miles north of site 1—had structures that were eventually dismantled following a lightning strike. (Doc. 12-2 at 79.) Ms. Begay was in elementary school at the time of the lightning strike. (*Id.* at 82.) Afterwards, Ms. Begay's family only used the site for ceremonial purposes. (*Id.* at 79.)

In the year following her high school graduation, Ms. Begay moved to Reno, Nevada to work with her brother, John. (*Id.* at 84.) Ms. Begay then met her husband in 1963 and the two eventually had seven children. (Doc. 1 ¶ 14.) The Navajo Tribe granted the couple's marriage license on June 19, 1970, and Ms. Begay listed Salina Spring, Arizona as her residence. (Doc. 12 at 26.) After their marriage, Ms. Begay and her husband moved to site 1 to live with Ms. Begay's mother. (Doc. 1 ¶ 14.) While living at site 1, Ms.

Begay helped her mother and step-father manage a large flock of sheep. (Doc. 12-2 at 85.) In 1974, Ms. Begay began working at the Chinle Nursing Home. (*Id.* at 86.) Her commute was an hour in each direction. (*Id.*) On occasion, Ms. Begay stayed at her mother-in-law's house instead of commuting back to site 1. (*Id.* at 87–88.) In the fall of 1975, Ms. Begay acquired an apartment in Chinle. (*Id.* at 86–87.) The hogan on site 1 burned down in 1974 while Ms. Begay worked in Chinle. (*Id.* at 90.) However, she did not find out about this until a month later. (Doc. 23 at 7.)

Shirley Nez, another member of Navajo Nation, is the niece of Ms. Begay through Ms. Begay's older brother, John. (Doc. 12-2 at 144.) In 1962, due to her mother's illness, Ms. Nez relocated to site 1 with Ms. Begay's family. (Doc. 1 ¶ 28.) Ms. Nez attended and lived at Holbrook High School from 1974 through 1976. (*Id.* ¶ 32.) Ms. Begay and her husband often checked Ms. Nez out of high school and brought her back to the homesite. (*Id.*)

In November 1974, the Bureau of Indian Affairs ("BIA") conducted an enumeration of the Jeddito area. (Doc. 12-2 at 178.) The area claimed by Ms. Begay as site 1 was identified as 102SE65, 66 and the enumerators listed the site as abandoned. (*Id.* at 183.) The BIA enumerators noted a dwelling and a corral at that site. (*Id.*) The enumerators enumerated James Salago Begay, Ms. Begay's step-father, at 102SW at 7, 8, and 10—a plot about two miles north of the Jeddito Chapter House. (*Id.* at 184).

In November of 2011, Joe Shelton, then an employee of the ONHIR, conducted a field investigation of site 1 with a co-worker and Ms. Begay. (Doc. 19 at 5.) Mr. Shelton did not participate in the BIA enumerations. (*Id.*) The November visit was Mr. Shelton's first time visiting the site. (*Id.* at 5–6.)

\* \* \*

After the hearing the IHO afforded each party a two-week period to submit Post-Hearing Memoranda. (*Id.* at 193.) At the conclusion of that time the IHO denied Ms. Begay's administrative appeal finding that her testimony about residing on the HPL in 1974 was not credible and that she had not rebutted the BIA enumerators' findings that the

1 improvements at the claimed location were abandoned. (*Id.* at 299–307.) Ms. Begay's appeal of the decision of the IHO is now before this Court. (*See* Doc. 1.)

As noted above, Ms. Begay brings her claim under the Navajo-Hopi Land Settlement Act (the "Settlement Act" or the "Act"). (Doc. 12-2 at 1); *see* 25 U.S. §§ 640d–640d-31 (repealed 1974); *see also Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119, 1121–22 (9th Cir. 1989) (explaining the history leading up to the Settlement Act); *Herbert v. Office of Navajo and Hopi Indian Relocation*, CV-06-03014-PCT-NVW, 2008 WL 11338896, at *1 (D. Ariz. Feb. 27, 2008) (same). The Settlement Act divided land formerly referred to as the "Joint Use Area" ("JUA") into the Hopi Partitioned Lands ("HPL") and Navajo Partitioned Lands ("NPL") given to each tribe. *Clinton v. Babbitt*, 180 F.3d 1081, 1084 (9th Cir. 1999). Because the Settlement Act required members of each tribe to move from lands partitioned to the other tribe, the Act also created a federal agency—known in its present form as ONHIR—to oversee relocation and to provide relocation benefits to eligible members. *See Clinton*, 180 F.3d at 84; *Bendoni*, 878 F.2d at 1122. Ms. Begay argues denial of her relocation benefits was arbitrary and capricious and seeks a summary judgment to that effect.

## II.    STANDARD OF REVIEW

"[S]ummary judgment is an appropriate mechanism for deciding the legal question of whether [ONHIR] could reasonably have found the facts as it did." *Laughter v. ONHIR*, No. CV-16-08196-PCT-DLR, 2017 WL 2806841, at *2 (D. Ariz. June 29, 2017) (internal quotation marks and citation omitted). Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"Unless Congress specifies otherwise, we review agency action under the Administrative Procedure Act (the APA) which empowers the Court to 'set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Hopi Tribe v. Navajo Tribe*, 46 F.3d 908, 914

(9th Cir. 1995) (quoting 5 U.S.C. § 706(2)(A)). This is a "'narrow' standard of review" under which the reviewing court cannot "'substitute its judgment for that of the agency.'" *FCC v. Fox TV Stations, Inc.*, 556 U.S. 502, 513 (2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The Court must instead presume the IHO acted lawfully "unless [the Court's] thorough inspection of the record yields no discernible rational basis for the agency's action." *Davis v. United States EPA*, 348 F.3d 772, 781 (9th Cir. 2003). A decision is arbitrary and capricious if the agency:

> has relied on factors which congress has not intended it to consider. Entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

Substantial evidence requires only "such relevant evidence as a reasonable mind might accept as adequate." *Info. Providers' Coal. for Defense of the First Amendment v. FCC*, 928 F.2d 866, 870 (9th Cir. 1991) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Although this standard requires "more than a mere scintilla," it is met by "less than a preponderance[.]" *Orteza v. Shalala*, 50 F. 3d 748, 749 (9th Cir. 1995).

The Court will also overturn an agency's decision for abuse of discretion where the IHO fails to justify his decision. While the agency possesses discretion, it still "must cogently explain why it has exercised its discretion in a given manner" by providing findings and an analysis justifying the decision made. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 48. The Court gives great deference to an IHO's witness credibility determination because of their unique position to witness the testimony at the hearing. *See Sarvia-Quintanilla v. INS*, 767 F.2d 1387, 1395 (9th Cir. 1985). The IHO alone is able to "observe [a witness's] tone and demeanor" to "explore inconsistencies" or "decide whether [a witness'] testimony has about it the ring of truth." *Id.* The Court will only overturn a credibility determination where the IHO did not provide specific and cogent reasons supported by substantial evidence. *De Valle v. INS*, 901 F.2d 787, 792 (9th Cir. 1990)

1  (citing *Vilorio-Lopez v. INS*, 852 F.2d 1137, 1141 (9th Cir. 1988)).

2  **III.   DISCUSSION**

Ms. Begay brings two arguments. The first is that the IHO's credibility determinations are not supported by substantial evidence. (*See* Doc. 19 at 14–16.) The second is that the IHO improperly found that Ms. Begay did not disprove the BIA enumeration findings. (*See id.* at 7–14.)

### A. IHO's Credibility Determinations

Ms. Begay argues that the IHO provided a cursory—one sentence—dismissal of the testimony of Ms. Begay and Ms. Nez. (*Id.* at 14.)

Here, the IHO found that Ms. Begay and Ms. Nez were not credible witnesses and Mr. Shelton was a credible witness. (Doc. 12-2 at 299–300.) Ms. Begay contends that the IHO's "cursory dismissal of the testimony . . . fails to meet the standard to support an adverse credibility determination." (Doc. 19 at 15.) She further contends that the IHO issued a "terse, boilerplate dismissal of all testimony related to the issue of residency" which failed to proffer "credible reasons for finding the witnesses not credible." (*Id.* at 15–16.) Therefore, Ms. Begay argues that the IHO's "findings are clearly not based upon substantial evidence and are not valid under the APA." (*Id.* at 16.) However, the record shows Ms. Begay's proposition is not accurate.

The IHO spent several paragraphs discussing the inconsistencies between the testimony of Ms. Begay and that of Ms. Nez, with the descriptions of the homesites, with the Tribal official's letters, and with aerial maps and field investigation findings. (*See* Doc. 12-2 at 301–307.) The IHO proffered nine different reasons for discounting the credibility of Ms. Begay's and Ms. Nez's testimony, with the foremost reason being the explicit inconsistencies between the testimonies.[1] All of these discrepancies supported the IHO's

---

[1] "[Ms. Nez] placed the structures at the claimed location in different areas than [Ms. Begay], she insisted that the residence was a seasonal camp even though [Ms. Begay] testified about its year-round use, and she indicated that the hogan was occupied between 1969 and 1976 even though [Ms. Begay] said that it had burned [in 1972 or 1973] and was uninhabitable." (Doc. 12-2 at 302.)

- 6 -

credibility findings.

Therefore, affording the IHO the requisite deference, the Court finds that the IHO provided substantial evidence to support his credibility findings.

### B. BIA Enumeration Findings and Residency

Ms. Begay contends that the IHO improperly found that she failed to overcome the rebuttable presumption of the BIA enumeration findings. The party seeking benefits bears the burden of proving residency on HPL land. *Charles v. ONHIR*, 774 F. App'x 389, 390 (9th Cir. 2019). To overcome this burden, "[t]he correct standard is 'intent to reside combined with manifestations of that intent.'" *Id.* (quoting 49 Fed. Reg. 22, 277).

> '[I]n assessing an applicant['s] manifestations of intent to maintain legal residence in the partitioned lands,' ONHIR looks to multiple factors including: ownership of livestock, ownership of improvements, grazing permits, livestock sales receipts, homesite leases, public health records, school records, military records, employment records, mailing address records, banking records, driver's license records, tribal and county voting records, home ownership or rental off the disputed area, Social Security Administration records, Joint Use Area Roster, and other relevant data.

*Begay v. ONHIR*, No. CV-20-08102-PCT-SMB, 2021 WL 4247919, at *5 (D. Ariz. Sept. 17, 2021); *see* 49 Fed. Reg. 22, 278. The BIA enumeration serves as prima facie evidence of residency which Ms. Begay must rebut. *Begay v. ONHIR*, 305 F. Supp. 3d 1040, 1049 (D. Ariz. 2018); *see also Charles*, 774 F. App'x at 390.

Ms. Begay failed to overcome the prima facie evidence of lack of residency as established by the BIA enumeration. "The IHO did not base his findings exclusively on the BIA enumeration, but permissively took the BIA enumeration into account as evidence." *Begay*, 305 F. Supp. 3d at 1049. In his decision, the IHO pulled from a plethora of evidence to determine the residency of Ms. Begay. (Doc. 12-2 at 295–307.) The IHO looked beyond the BIA enumeration to support his conclusion. Ms. Begay described and drew a site substantially different from that described by Ms. Nez and the BIA enumeration records. (*Id.* at 301–302.) The IHO further relied on the field investigation conducted in 2011, which identified only

two of the structures on the site whereas Ms. Begay claimed there to be seven structures. (*Id.* at 303.) Additionally, the written letters provided by Jeddito Chapter officials placed the homesite of Ms. Begay two miles south of site 1. (*Id.* at 302–303.) The IHO did not base his decision solely on the BIA enumeration; rather, the BIA enumeration was a single branch within the bundle of sticks used to determine residency. Nonetheless, Ms. Begay failed to present any evidence to disprove the barrage of evidence in support of the BIA enumeration findings. "The absence of source documents is pervasive but the enumeration's results are still taken as *prima facie* accurate." (*Id.* at 306–307.) Therefore, Ms. Begay failed to rebut the presumption created by the BIA enumeration.

The IHO's findings establishing that Ms. Begay did not meet her burden to prove residency is supported by the evidence. As such the Court does not find the IHO's decision "unsupported by evidence or arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

## IV.   CONCLUSION

Accordingly,

**IT IS ORDERED** denying Ms. Begay's Motion for Summary Judgment, (Doc. 19), and granting ONHIR's Cross-Motion for Summary Judgment, (Doc. 23).

**IT IS FURTHER ORDERED** the Clerk of Court shall enter judgment in accordance with this order and terminate the case.

Dated this 13th day of July, 2022.

_____
Honorable Susan M. Brnovich
United States District Judge